IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES HARVEY,

    Plaintiff,

vs.                                Case No. 4:11cv637-SPM/CAS

E. HERCULE,
Chief Health Officer,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Discovery concluded in this case on October 22, 2012. Doc. 35. Defendant Hercule filed a timely motion for summary judgment, doc. 38, supported by several exhibits. An Order was entered to advise the Plaintiff of his obligation to respond to the summary judgment motion and set a deadline for doing so. Doc. 39.

This civil rights case alleging the denial of medical care, doc. 11, was initiated by Plaintiff, a pro se prisoner, and proceeded that way throughout discovery. In the interim however, just before the summary judgment motion was filed, a notice of appearance of counsel was filed on behalf of Plaintiff[1] by attorney James Sinclair. Doc. 37. In

---

[1] Plaintiff was released from prison in July 2012. Doc. 38 at 1; doc. 32.

December 2012, counsel requested an extension of time in which to respond to the summary judgment motion. Doc. 40. The motion was granted, and a deadline of January 9, 2013. As of this date, no response has been filed. For the reasons explained more fully below, it is recommended that the unopposed motion for summary judgment be granted.

**Allegations of the amended complaint, doc. 11**

Plaintiff alleged that when he arrived at Liberty Correctional Institution on November 19, 2010, he informed medical staff about an infection on the back of his head. Doc. 11 at 7. Plaintiff said it was very painful and staff advised that Plaintiff would be seen by the doctor. Plaintiff alleged that in January of 2011, he submitted a sick call request concerning his head infection. *Id.* at 8. When Defendant Hercule examined Plaintiff he said the infection "looked bad," and asked Plaintiff if it hurt, and Plaintiff replied that it did. Plaintiff asked the Defendant for pain medication and Defendant Hercule said No, if it continued to hurt, he would "order some next time." *Id.* Plaintiff's efforts to not have to wait until "next time" were not successful. More importantly, Plaintiff was "never rescheduled" to return to Defendant Hercule, so he filled out another sick call concerning the infection on his head on June 27, 2011. Plaintiff specifically asked for pain medication and to be examined by a dermatologist. The nurse discussed the matter with Defendant Hercule, and returned to advise Plaintiff that she was directed to give "Plaintiff some 'acne cream' off of the shelf <u>only</u>." Plaintiff contends that for the second time, Defendant Hercule denied him pain medication.

Plaintiff alleged that the infection grew worse, "leaving pus and blood stains on his pillowcase, and the inflammation and pain had increased so much that, the Plaintiff

could not lay down on the back of his head and he was forced to lay on his side allowing the infection to drain." *Id.* at 9. Plaintiff said that because the pain was so intense, he could not even touch "the infection with his wash rag to clean it while taking a shower." *Id.* In September 2011, Plaintiff declared a "medical emergency regarding a neck problem, and he was prescribed an antibiotic and cream for his neck." *Id.* At that time, Plaintiff again asked Defendant Hercule for "some pain medication for his head infection because the pain [was] excruciating." *Id.* Plaintiff repeatedly begged for pain medication, but was refused by Defendant Hercule. *Id.*

**Summary Judgment Standard of Review**

On a motion for summary judgment, the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If he does so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id*. An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All

reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

    Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion." The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source." The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format. Facts set forth in Defendants' statement are deemed admitted (if supported by the record evidence) unless controverted by Plaintiff's statement. Because Defendant included a statement of material facts as to which it is contended there is no genuine issue of fact, doc. 38 at 3-7, and because Plaintiff has not opposed that statement, facts set forth in Defendant's statement are deemed admitted as they are supported by record evidence.

## II. The relevant and undisputed Rule 56(e) evidence

Plaintiff was transferred to Liberty Correctional Institution on November 17, 2010, and his medical file was reviewed by medical staff. Doc. 38, Ex. A.[2] The transfer summary did not show that Plaintiff had any medical complaint upon his arrival at the Institution. *Id.* at 1; Ex. B at 2-3. On November 18th, the transfer summary was reviewed by Defendant Hercule, who at the time of the events in question, was the Chief Health Officer at Liberty C.I. Doc. 38, at 1.

After his arrival, Plaintiff was seen in the medical department on multiple occasions for various complaints, including issues with his diabetes, dizziness, and urinary problems. Ex. A, Ex. B at 4-13. Plaintiff never raised the issue of a problem with an infection on the back of his head until January 22, 2011. Ex. A at 1. On that day, Plaintiff was seen in sick call by Nurse Lafayette. Ex. A, Ex. B at 14-16. Plaintiff said he had a bad rash or an infected area on the back of his head, and said that it bleeds sometimes, Ex. A at 1-2, and he complained of acid reflux. Ex. B at 14. The nurse examined Plaintiff and concluded that it appeared to be PFB[3] on the back of Plaintiff's head. Ex. A at 2. The nurse noted that Plaintiff already had a shave pass and referred him to the doctor to determine if Plaintiff needed medicated shampoo. *Id.*

---

[2] All references to exhibits are to those attached to the motion for summary judgment, doc. 38, since Plaintiff has provided no opposition to summary judgment.

[3] PFB stands for Pseudofolliculitis barbae, a "medical condition causing persistent irritation from shaving." Ex. A, ¶ 6. PFB is "most common on the male face, but it can also happen on other parts of the body where the hair is shaved or plucked." *Id.* "PFB makes the skin look itchy and red and bumps can develop that look like pimples." *Id.* It commonly occurs on the face, but may "occur anywhere hair is shaved, including the back of the head or neck. The ingrown hair bumps that occur with PFB can sometimes become infected." Ex. A at 2.

Case No. 4:11cv637-SPM/CAS

On January 31, 2011, Plaintiff was examined by Dr. Salvador, a Clinical Associate at Liberty C.I. Ex. A at 2; Ex. B at 15. Dr. Salvador noted Plaintiff had small bumps on the back of his hairline, but no drainage was present. Ex. A at 2. Some of the bumps were scar tissue from old infections. *Id.* Dr. Salvador confirmed the PFB diagnosis and advised Plaintiff there was nothing that would completely stop the condition. *Id.* Plaintiff was advised "not to dig on the incoiled hair to avoid infections and scarring." Ex. A at 2.

Plaintiff did not return to the medical department specifically complaining of PFB from February 1st to June 27, 2011. Ex. B at 15-22. Defendant examined Plaintiff for the first time on April 19, 2011, in the Chronic Illness Clinic. Ex. A at 2; Ex. B at 19. Plaintiff was examined regularly in that Clinic due to his hypertension and diabetes. Ex. A at 2. During Defendant's examination of Plaintiff, he noted that Plaintiff "had a fungal infection in the nuchal area behind his neck." *Id.* Defendant prescribed Plaintiff 100 mg of Fluconazole for 10 days, which is commonly known as Diflucan, an antifungal medication used to treat fungal infection. *Id.* Plaintiff did not request any pain medication during that examination, nor would pain medication be clinically indicated for the infection. *Id.*

On June 27th, Plaintiff was seen in sick call by Nurse Potter. Ex. A at 2; Ex. B at 22-24. At that time, Plaintiff complained about the rash on the back of his head and said it had been going on for over a year, off and on. Ex. A at 2. Plaintiff said that it had previously been treated with acne cream. *Id.* The medical record reflects that Plaintiff had six lesions to the back of his head with no drainage present. *Id.* Plaintiff did not report that he was experiencing pain at that time. *Id.* Plaintiff was provided over

the counter cream for his head and was told to return if his symptoms worsened or if new symptoms developed.  *Id.*  During the June 27th visit, Plaintiff was provided treatment entirely by Nurse Potter.  *Id.*  There was no basis to confer with the doctor, or refer Plaintiff to see the doctor for that condition.  *Id.*  Defendant Hercule was never notified about Plaintiff's condition on June 27, 2011, and the medical records do not indicate a referral to a clinician was warranted or made.  Ex. B at 22-24.

On Saturday, September 10, 2011, Plaintiff declared a medical emergency and said his neck was swollen and painful.  Ex. A at 2; Ex. B at 25.  Plaintiff said his neck had been like that for two days.  Ex. A at 2.  He was examined by Nurse Eikeland, who noted the presence of nodules (hard, solid masses under the skin's surface), and Plaintiff was given 200 mg. tablets of Ibuprofen for pain and referred to the clinician for Monday's callout.  *Id.*  Plaintiff was instructed about cleaning the area, applying a warm compress, and to not squeeze the area and avoid friction.  *Id.*  He as also directed to return if his pain increased, if there was an increase in redness or swelling, or if any new symptoms developed.  *Id.* at 2-3.

On the following Monday, September 12, 2011, Defendant Hercule examined Plaintiff to rule out an abscess or cellulitis infection.  Ex. A at 3; Ex. B at 26-27.  Defendant noted multiple red, raised lesions in groups on the right side of the neck that were tender to palpation.  Ex. A at 3.  Plaintiff said he had no pain or difficulty swallowing.  *Id.*  Plaintiff also was found to have a waxy build-up in his left ear canal, but his vital signs were normal with a temperature of 98.8 and blood pressure of

110/60.  *Id.*  Plaintiff was diagnosed with cellulitis[4] and prescribed 500 mg. of Amoxicillin to be taken twice a day for ten days.  *Id.*  Plaintiff was instructed about the importance of taking the medication and to report any difficulty in breathing.  *Id.*  Defendant reports that Plaintiff did not appear to be in pain or distress, and no prescription strength pain medication was clinically indicated.  *Id.* at 3-4.  Over the counter pain medications such as Tylenol and Ibuprofen are available to inmates such as Plaintiff in the dorm.  *Id.* at 3.  At no time during this exam did Plaintiff beg or plead with Defendant Hercule to provide him with pain medication.  *Id.*

Plaintiff did not return to medical with any additional problems relating to his condition prior to initiating this lawsuit on December 19, 2011.  Doc. 1.  Defendant did not treat Plaintiff again after that September 12th examination, as the Defendant left Liberty C.I. in October 2011.  Ex. A at 3.

Plaintiff was seen at sick call on December 28, 2011, and asked whether his skin infection had cleared up.  *Id.* at 3.  At that time, rather than the pustules which were noted in September, Plaintiff's condition had improved and the examination revealed only whiteheads with no signs of inflammation and no drainage was observed.  *Id.*  No treatment was required, and Plaintiff was provided acetaminophen for a headache.  *Id.*  Once again, Plaintiff was directed to return to the clinic if his pain increased, there was redness or swelling, or if new symptoms developed.  *Id.*

---

[4] Cellulitis is a localized inflammation of connective tissue characterized by severe inflammation of the dermal and subcutaneous layers of the skin.  Ex. A.  It often occurs where skin has previously been broken and can occur on any part of the body.  It is generally treated with oral antibiotics, such as Amoxicillin.  *Id.*

Case No. 4:11cv637-SPM/CAS

**Analysis**

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40 F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

The concept of deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Subjective recklessness, as defined in criminal law, is the standard which must be shown for an official's actions to rise to the level of deliberate indifference. *Id*. Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a basic human need. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Combining the standards from <u>Farmer</u> and <u>Estelle</u>, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." <u>Taylor v. Adams</u>, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003). Put another way, once a prisoner shows that he has a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir.1999).

Medical malpractice does not constitute deliberate indifference. <u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. at 292. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991), citing <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989); *see also* <u>Johnson v. Stephan</u>, 6 F.3d 691, 692 (10th Cir. 1993).

Not responding to complaints of pain is an Eighth Amendment violation and qualified immunity is unavailable. <u>McElligott v. Foley</u>, 182 F.3d 1248 (11th Cir. 1999). Where a defendant is aware that the pain medication provided is not treating the prisoner's pain, and he does nothing more to treat that pain or respond to a deteriorating condition, a jury could find that defendant violated the Eighth Amendment. An "official acts with deliberate indifference when he or she knows that an inmate is in

serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." McElligott, 182 F.3d at 1255, citing Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir.1989).

The undisputed evidence in this case reveals that Plaintiff's medical needs which form the basis of this case were not serious and that the Defendant was not deliberately indifferent to Plaintiff's medical needs. At no time when Defendant was examining Plaintiff did he report to medical complaining that he was in great pain, and there is no evidence in this record upon which it could be found that the Defendant refused to provide Plaintiff with pain medication as alleged in the complaint. When Plaintiff was examined by the Defendant for the first time on April 19, 2011, for his hypertension and diabetes, he noted that Plaintiff "had a fungal infection in the nuchal area behind his neck." Defendant prescribed Plaintiff 100 mg of Fluconazole, but no pain medication was prescribed at that time because Plaintiff did not report pain, nor did Plaintiff request pain medication. Defendant saw Plaintiff again on Monday, September 12th after Plaintiff declared a medical emergency on Saturday, September 10, 2011. On Saturday, Plaintiff did report his neck was swollen and painful, but he was provided Ibuprofen for pain by the nurse. When the Defendant examined Plaintiff on Monday, Plaintiff said he was not in pain and had no difficulty swallowing. Plaintiff was provided Amoxicillin, but not pain medication because he did not appear to be in pain or distress. If Plaintiff was in mild discomfort, over the counter pain medications such as Tylenol and Ibuprofen were available to Plaintiff in his dorm. At no time did Plaintiff ever beg, plead, or otherwise request that Defendant Hercule provide him with pain medication, and at no time did the Defendant refuse to provide pain medication. Thus, there is no

evidence that Defendant Hercule was indifferent to Plaintiff's medical needs. Defendant Hercule provided Plaintiff with antibiotics and treated Plaintiff's cellulitis and PFB problems.

Routine discomfort does not qualify as a serious medical need. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992). Moreover, "the Eleventh Circuit Court of Appeals has ruled that PFB does not constitute a serious medical need." <u>Bruno v. Parekh</u>, No. 2:06-cv-432, 2008 WL 2413997, at *4 (M.D. Fla., June 11, 2008), *citing to* <u>Shabazz v. Barnauskas</u>, 790 F.2d 1536, 1538 (11th Cir. 1986), *cert. denied* 107 S.Ct. 655 (1986), abrogated on other grounds by <u>Harris v. Chapman</u>, 97 F.3d 499, (11th Cir. 1996) (finding RFRA changed the standard of review in prisoner First Amendment cases); *see also* <u>Sherrod v. Dratler</u>, No. 4:10cv102, 2011 WL 4424752 (N.D. Fla., Aug. 18, 2011) (finding that plaintiff came forward with no evidence to show his PFB was a serious medical need and more than a minor discomfort). Because the evidence does not reveal any violation of Plaintiff's Eighth Amendment rights, summary judgment should be granted in favor of the Defendant on all Plaintiff's claims.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 38, be **GRANTED**, and judgment be entered in Defendant's favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on March 18, 2013.

                         S/     Charles A. Stampelos
                         **CHARLES A. STAMPELOS**
                         **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**